IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE WEAVER,                    )
on behalf of R.L.F. IV (Minor)      )
                                    )
                    Plaintiff,      )       Civil Action No. 25-16
        v.                          )
                                    )
FRANK BISIGNANO,[1]                 )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
                    Defendant,      )


MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of R.L.F., IV ("minor")

filed by Michelle Weaver, minor's mother, acting on the minor's behalf ("plaintiff"), for

supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42

U.S.C. §§ 405(g), 1383(c)(3).   Plaintiff contends the Administrative Law Judge (the "ALJ")

improperly failed to evaluate the opinion of the minor's social worker considering its consistency

with the teacher questionnaires submitted in the record.   Plaintiff asserts that the ALJ's decision

is not supported by substantial evidence, because the ALJ did not sufficiently demonstrate the

consistency and supportability factors she used in her forming her opinion.   It is plaintiff's

contention that the case should be reversed or remanded for the ALJ to consider properly all the

evidence of record, including the opinion of the minor's treating social worker.   The

---

1.   Frank Bisignano became the Commissioner of Social on May 7, 2025, and is automatically
substituted for then-Acting Commissioner Leland Dudek as a party in this case pursuant to Fed.
R. Civ. P. 25(d). No further action is required due to the last sentence of § 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a motion and brief in support of the motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure (ECF Nos. 9, 10). The Commissioner filed a brief in opposition to plaintiff's motion (ECF No. 15). Plaintiff filed a reply reasserting the issues in the primary brief (ECF No. 16). The court will deny plaintiff's motion for summary judgment (ECF No. 9) for the reasons set forth below.

## II.    PROCEDURAL HISTORY

Plaintiff filed previous applications for SSI benefits on behalf of the minor in August 2011 and February 2015. (Def.'s Br. ECF No. 15 at 4.) The 2011 application was denied by an administrative law judge on March 6, 2013, and not appealed. (R. at 64.) The 2015 (second) application was denied by an administrative law judge on October 4, 2017, (R. at 82), confirmed by the Appeals Counsel, and appealed to United States District Court. (Civ. No. 18-1550, ECF No. 4.) The district court remanded the case to the Commissioner to determine the impact of the minor's structured school setting, and consider whether, in the absence of the support received by the minor's Individualized Education Program ("IEP"), the minor would have the ability to function in a non-structured setting. (Civ. No. 18-1550, ECF No. 15 at 7.)

On remand, a third administrative law judge conducted a hearing by telephone on May 4, 2020, (R. at 113) and on September 30, 2020, denied plaintiff's application for benefits on behalf of the minor. (R. at 110.) That administrative law judge's decision was confirmed by the Appeals Counsel and plaintiff appealed to United States District Court. On August 24, 2022,

the district court found the administrative law judge's decision was supported by substantial evidence and affirmed the agency's final decision (Civ. No. 20-1669, ECF No. 32.)

On November 17, 2022, plaintiff protectively filed the current Title XVI application for SSI, with a claimed disability onset date of October 1, 2020. (R. at 10.)  The claim was initially denied on April 7, 2023, and again upon reconsideration, on June 29, 2023. (Id.)   On July 13, 2023, plaintiff requested a hearing, which was conducted by telephone before the ALJ on February 6, 2024. (Id.)   Plaintiff agreed to appear by telephone and, in her capacity as the minor's mother, testified at the hearing on her child's behalf. (Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)

In a decision dated April 24, 2024, the ALJ determined that the minor was not disabled within the meaning of the SSA under § 1614(a)(3)(c). (R. at 24.)   Plaintiff timely requested a review of that determination and by letter dated November 14, 2024, the Appeals Council denied the request for review.   The decision of the ALJ became the final decision of the Commissioner. (R. at 1-3.)   Plaintiff, having exhausted administrative remedies through the Social Security Administration, subsequently commenced this action seeking judicial review.

III.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7 (1947).   "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).   "As a part of this review, 'a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willbanks v. Sec'y of Health & Hum. Servs., 847 F.2d 301, 303 (6th Cir.1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

## IV.    THE MINOR'S BACKGROUND AND MEDICAL EVIDENCE

### A.    Minor's Background

The minor was born on June 8, 2007, and was "a school-age child" at the time this application was filed in November 2022, and was "an adolescent" at the time of the hearing. (R.

at 11.)   The minor was a high school student in 11th grade at an online cyber school that the minor attends from home. (R. at 44.)   The mother testified that the minor required additional supports for the minor's limitations from attention deficit hyperactivity disorder ("ADHD") and anxiety. (Id.)

Plaintiff's appeal of denial of SSI benefits for the minor focuses solely on the "disability-supporting opinion" of the minor's therapist, Licensed Clinical Social Worker ("LCSW") Marcus Flournoy, and, specifically, the ALJ's alleged failure to evaluate the consistency of LCSW Flournoy's opinion with two teacher questionnaires. (Pl.'s Br. ECF No. 10.)   Under the circumstances, the minor's noted severe non-mental health related impairments, such as asthma and allergies, and any non-severe impairments, such as G6PD deficiency, will not be focused on in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived.").

**B.    Medical Record Evidence**

**1.    Therapist LCSW Flournoy**

The minor has a history of anxiety.   The minor was regularly seen by therapist LCSW Flournoy for mental health counseling since January 2020. (R. at 1483.)   The minor meets with LCSW Flournoy approximately once every three weeks for an hour. (R. at 1478.)   LCSW Flournoy's session summaries are included in the record and were considered by the ALJ. (R. at 1483-1526.)

LCSW Flournoy prepared a summary letter of his findings with respect to the minor on February 5, 2023. (R. at 436.)   He also prepared a "child mental health questionnaire" medical source statement, dated January 18, 2024, relative to his clinical findings about the minor, which

was submitted to and considered by the ALJ. (R. at 1478-1481.)   This assessment, in the free

form written section, noted the minor has a history of "excessive worry and fear," with a

prognosis, that "with continued therapy using mindfulness … he will continue to improve and

manage anxiety." (R. at 1478.)   In the general limitations check-box section of the child mental

health questionnaire, LCSW Flournoy checked the boxes for "markedly limited" in four areas:

> - social functioning (a child's capacity to form and maintain relationships …);
> - deficiencies of concentration, persistence, or pace resulting in frequent failure
>   to complete tasks in a timely manner;
> - attending and completing tasks (ability to focus and maintain attention …); and,
> - interacting and relating with others (ability to initiate and sustain emotional
>   connection with others …).

(R. at 1480.)   He indicated the minor was "moderately limited" in the areas of acquiring and

using information, and caring for self (ability to maintain a healthy emotional state, including …

how patient copes with stress …); and "none," indicating not limited, in the area of personal

functioning – self-care, i.e., personal needs, health, and safety (feeding, dressing, toileting,

bathing …). (Id.)

## 2.   Michelle Mattis, Psychologist

On March 25, 2023, the minor was seen and evaluated by Michelle Mattis, Psy.D. ("Dr.

Mattis"), for a consultative mental health status examination. (R. at 437-445.)   In Dr. Mattis'

one-time evaluation, she noted, among other things, the minor's reported history of attention

deficit disorder and anxiety. (R. at 437.)   Based on the minor's response to questioning, Dr.

Mattis reported the minor's "relationship with parents and other adults is described as good …

[and the minor had] positive relationship[s] interacting with others [the minor's] own age, both

in person and through online schooling." (R. at 438.)   She noted the minor was "mildly impaired

due to distractibility," but that the minor reported "feeling good today." (R. at 439.)   Dr. Mattis

opined the minor's cognitive function was in the "average range" and that the minor is "capable of participating in all activities of daily living independently." (R. at 440.)   The prognosis given by Dr. Mattis for the minor is "[g]ood given the [minor's] progress and improvement so far with therapy." (Id.)

### 3. State Agency Medical Consultants

The minor's medical record file was reviewed by state agency medical consultants for independent disability determination analysis. (R. at 132-145.)   Psychologist Faisal Roberts, Psy.D., provided a mental health review of the file on April 5, 2023, (R. at 107), and Pediatrician Antonella Polito, M.D., on April 7, 2023, noted findings about the minor's medical conditions. (R. at 136.)   On re-review, Stacie Jean Barnes, Psy.D., on June 2, 2023, assessed the minor's mental health record, and Pediatrician Sanjay M. Gandhi, M.D., reviewed other medical conditions on June 29, 2023. (R. at 130.)

In each determination, the medical findings of fact noted that the minor's IEPs and therapy notes had been reviewed. (R. at 134-135, 141-142.)   Each medical source recommended a finding of "not disabled" (R. at 137, 145) after determining the minor "Does Not Functionally Equal The Listings Based On Childhood Domain Evaluation." (R. at 135, 142.)

### C. Non-Medical Record Evidence

### 1. IEPs

The minor's record file includes numerous IEP reports from both the brick-and-mortar school the minor previously attended, as well as the online cyber school the minor currently attends. (R. at 457-1440.)   The minor's educational records, in the form of IEPs, Notice of Recommended Educational Placement reports, and Reevaluation Reports ("RR"), indicate the

minor receives itinerant support services, which means the minor is in the regular education

setting with non-special education students for at least eighty percent of the minor's education

needs.[2]  (R. at 502, 556, 584, 588, 594, 604, 651, 683, 730, 771, 88, 846, 933, 961, 1021, 1033,

1042, 1079, 1089, 1137, 1139, 1266.)    The minor's triennial RR was reported on September 13,

2023, and noted that "[the minor] no longer qualified for speech language support, and it was

recommended that he be discharged from services." (R. at 1173.)    In the "Eligibility" section of

the RR, the report stated, "[t]hough [the minor's mother] reports concern for [the minor's] ability

to attend, manage [the minor's] assignments, and organization, her ratings do not endorse

clinically significant concerns." (R. at 1207.)    The minor's most current IEP in the record, dated

September 29, 2023, (R. at 1220-1272), which was informed by the September 13, 2023 RR,

states, "[the minor] has all of [the minor's] classes, with the exception of math, with age-

appropriate students in the general education setting." (R. at 1264.)    This report indicates eighty-

six percent of the minor's school day is in a regular classroom setting. (R. at 1266.)

### 2.    Teacher Questionnaires

Plaintiff points to two teacher questionnaire responses in support of the assertion that

LCSW Flournoy's disability-supporting opinion was consistent with the minor's record and

should have been afforded more weight by the ALJ.    Teacher questionnaires provide

observational information for five of the six functional domains, not including health and

physical well-being.    The minor's special education teacher, Jennifer Tyler, completed a teacher

---

2.   The minor's IEPs dated from January 2017 provide the only record of the minor receiving "Supplemental" education support, which is classified as forty to seventy-nine percent of the class day in the regular classroom setting and the remainder in a special education setting. The minor was noted to spend seventy-nine percent of the day in regular education and twenty-one percent in the special education setting. (R. at 799, 1017.)

questionnaire on December 12, 2022. (R. at 458-467.)   She reported the minor had no problems in the domains of interacting and relating to others, and moving about and manipulating objects. (R. at 463-464.)    Ms. Tyler checked the box for "yes, the child has problems" in the domains of acquiring and using information, attending and completing tasks, and caring for himself. (R. at 461, 462, 465.)   With ten to thirteen sub-components asked questions under each domain, to be rated on a five-point scale from 1-no problem to 5-a very serious problem, Ms. Tyler did not report any problem in any domain for the minor as 4-a serious problem or 5-a very serious problem, with the exception of comprehending and doing math problems, under the acquiring and using information domain (R. at 461-465.)

A second teacher questionnaire was completed on January 9, 2024, by Rachel Muzria, the assistant principal. (R. at 1442-1449.)   Ms. Muzria reported the minor had no problems in the domains of interacting and relating to others, moving about and manipulating objects, and caring for oneself. (R. at 1445-1447.)   She checked the box for "yes, the child has problems" in the domains of acquiring and using information, and attending and completing tasks. (R. at 1443-1444.)   Ms. Muzria reported the minor had 5-a very serious problem in comprehending and doing math problems, 5-a very serious problem expressing ideas in written form, and 4-a serious problem applying problem solving skills in class discussions, under the acquiring and using information domain. (R. at 1443.) She also reported 4-a serious problem with the minor carrying out multi-step instructions, under the attending and completing tasks domain. (R. at 1444.)

## V.    DISCUSSION

### A.    Child Disability Standards

The SSA provides that for a child under the age of 18 to be found "disabled," and eligible

for SSI, the child must have:

> a medically determinable physical or mental impairment, which results
> in marked and severe functional limitations, and which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

> The Commissioner's regulations require a three-step analysis to determine
> whether a child is disabled: (1) that the child is not working; (2) that the child had
> a "severe" impairment or combination of impairments; and (3) that the
> impairment, or combination of impairments, was of Listing-level severity,
> meaning the impairment(s) met, medically equaled or functionally equaled the
> severity of an impairment in the Listings. 20 C.F.R. § 416.924(a). The regulations
> provide that functional equivalence to the severity of an impairment in the
> Listings may be determined based on domains of functioning. 20 C.F.R. §
> 416.926a. A medically determinable impairment or combination of impairments
> functionally equals a listed impairment if it "result[s] in 'marked' limitations in
> two domains of functioning or an 'extreme' limitation in one domain." Id. §
> 416.926a(a). A child's functional limitations are considered in terms of six
> domains: "(i) Acquiring and using information; (ii) Attending and completing
> tasks; (iii) Interacting and relating with others; (iv) Moving about and
> manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-
> being." Id. § 416.926a(b)(1).

T.C. ex rel. Z.C. v. Comm'r of Soc. Sec., 497 F. App'x 158, 160-61 (3d Cir. 2012).

### B.    ALJ's Findings

#### 1.    Three-step sequential evaluation

Proceeding through the three-step sequential evaluation process utilized for children, the

ALJ determined at step one that the minor had not engaged in substantial activity since the

November 17, 2022 application date, (R. at 11); at step two acknowledged the minor had severe

impairments of asthma, allergies, ADHD, learning disorder, anxiety, and personality disorder, (id.); and at step three found that the minor does not have an impairment or combination of impairments that meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11, 13.)   For a child, the analysis of whether an impairment or combination of impairments meets an Appendix A listing is conducted for both medical and functional equivalency. (R. at 10.)

### 2.    Medical Severity

The ALJ considered the minor's limitations to determine whether the minor would meet the *medical* severity for one of the listings, specifically for 112.06, 112.08 or 112.11, but found that while the minor met the "paragraph A" criteria, the minor's record did not support a finding that the minor's impairments met the "paragraph B" criterion for any of those listings. (R. at 12.) To satisfy "paragraph B," mental impairments must result in an extreme level of limitation in one or a marked level of limitation in two of the four areas of mental functioning: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and, adapt or manage oneself." (Id.)   No medical source identified any extreme limitations.   A limitation is "marked" when it "interferes seriously with your ability to independently initiate, sustain, or complete activities" and marked means "more than moderate but less than extreme." T.C. ex rel. Z.C., 497 F. App'x at 161 (quoting 20 C.F.R. § 416.926a(e)(2)(i)).   The ALJ found that the minor had "moderate" limitations in all four mental functioning areas, and determined the minor's impairments did not meet a listing. (R. at 12-13.)   The ALJ's analysis of the pertinent domains for medical severity was addressed in the analysis of the functional

severity domains.   For the same reasons discussed with respect to the functional severity domains, the ALJ found the minor's limitations were only "moderate" limitations.

### 3.    Functional Severity

The ALJ considered whether the minor's limitations would meet the *functional* severity for one of the listings considering how the minor functions in six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being." (R. at 13.)   Like with medical severity, to meet the qualifications to functionally equal one of the listings, the minor's limitations would need to result in finding of "extreme" limitations in one domain or "marked" limitations in two domains. (Id.)   Here, no medical source statement in the record indicated any "extreme" limitation, and the ALJ needed to determine whether the minor had marked limitations in two domains.

The ALJ considered the minor's symptoms in a two-step process: first, determining whether the minor had an "underlying medically determinable physical or mental impairment;" and, second, once that was established, evaluating "the intensity, persistence, and limiting effects of the [minor's] symptoms to determine the extent to which they limit the [minor's] functional limitations." (R. at 14.)   After reviewing all the evidence in the record, the ALJ determined that the minor's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 16.)   The ALJ found that the minor had "less than marked" limitations in each of the six functional areas, with the exception of the area of moving about and manipulating objects where she found the minor had "no limitation." (R. at 14, 20-22.)

**C.    Alleged Error: Failure to Sufficiently Evaluate the Consistency of the January 18, 2024 Opinion of LCSW Flournoy in Light of Teacher Questionnaires Submitted**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence; specifically, that the ALJ failed to "properly evaluate the consistency of LCSW Flournoy's disability-supporting opinion" with other evidence in the minor's record, i.e., the teacher questionnaires provided by Ms. Tyler and Ms. Muzria. (Pl.'s Br. ECF No. 10 at 1, 10.)   LCSW Flournoy's medical source statement indicated "marked limitations" in four areas, as noted above.   Plaintiff claims that, after reviewing the teacher questionnaires, the ALJ should have demonstrated why she did not give LCSW Flournoy's opinion more consideration in light of the teacher questionnaires being consistent with his opinion. (Id. at 12.)

**D.    Analysis**

For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[3]

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements.

---

3.   The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in

Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c);

416.920c(b), (c), (2017)).

In applying the altered policy, a district court commented:

[I]n March of 2017, the Commissioner's regulations governing medical opinions
changed in a number of fundamental ways. The range of opinions that ALJs were
enjoined to consider were broadened substantially and the approach to evaluating
opinions was changed from a hierarchical form of review to a more holistic
analysis…. According to the new regulations, the Commissioner "will no longer
give any specific evidentiary weight to medical opinions; this includes giving
controlling weight to any medical opinion." Instead, the Commissioner must
consider all medical opinions and "evaluate their persuasiveness" based on the
following five factors: supportability; consistency; relationship with the claimant;
specialization; and "other factors." Although the new regulations eliminate the
perceived hierarchy of medical sources, deference to specific medical opinions,
and assigning "weight" to a medical opinion, the ALJ must still "articulate how
[he or she] considered the medical opinions" and "how persuasive [he or she]
find[s] all of the medical opinions." **The two "most important factors for
determining the persuasiveness of medical opinions are consistency and
supportability**," [and a]n ALJ is specifically required to "explain how [he or she]
considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982, *7-8 (M.D. Pa. Mar. 29,

2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).

The ALJ considered and addressed the supportability and consistency of LCSW

Flournoy's opinion.   She supported her finding that there was "no support for the marked

limitations" in the opinion in LCSW Flournoy's medical source statement based on the

comments made in LCSW Flournoy's treatment notes, which,

generally show[ed] the [plaintiff] was managing his symptoms, in all but two
examinations, he had no problems with focus, memory, and concentration; and
he is consistently noted to have normal affect, and oriented to time, place and
person…. Such extreme findings are also not consistent with the record as a
whole, including his consultative mental status exam (D9F), his primary care
provider treating source statement, who prescribes his medication (D20F), and

14

school records showing he has good grades and generally completes his work
(e.g., D12F, D14F).

(R. at 23.)

Plaintiff cites to <u>Prodin v. Kijakazi</u>, No. CV 20-1372, 2022 WL 973703 (W.D. Pa. Mar.
31, 2022), to support the position that LCSW Flournoy's disability-supporting opinion should
have been considered more because it is consistent with the non-medical opinions offered in the
teacher questionnaires. (Pl.'s Br. ECF No. 10 at 12.)   In <u>Prodin</u>, the plaintiff in question was an
adult who was appealing an administrative law judge's decision to find his therapist's opinion
"somewhat persuasive" and two other medical opinions "less persuasive." <u>Prodin</u>, 2022 WL
973703 at *3.   Prodin argued the medical opinions should have been evaluated for consistency
with his testimony about the severity of his impairments. <u>Id.</u>   That case was remanded because
the administrative law judge's decision was "too cursory to permit meaningful review." <u>Id.</u> at *4.
<u>Prodin</u> is distinguishable from this case, however, because the ALJ here adequately explained
why, considering LCSW Flournoy's treatment notes and the opinions of other medical
professionals, she found LCSW Flournoy's opinion to be only "somewhat persuasive." (R. at 16-
17, 22-23.)

The ALJ concluded the record as a whole supported "less than marked" limitations in
five domains and "no limitation" in the moving about/manipulating objects domain. (R. at 20-
22.)   The ALJ determined the assessments from the reviewing state and consultive medical
professionals resulted in more appropriate findings for the minor's abilities generally, given the
progress the minor has made in focus and concentration due to ongoing therapy and medication
to respond to his anxiety and ADHD respectively, and by attending cyber school. (R. at 22.)

15

As noted, this court needs to consider whether the ALJ's decision is supported by substantial evidence.   Here, the ALJ fully evaluated LCSW Flournoy's opinion, found his opinion about marked limitations was not supported or consistent with the totality of the record, including his own treatment notes, and explained why the other medical professional opinions about the minor's limitations were more persuasive.   While the ALJ is not required to "articulate how she considered evidence from non-medical sources," the ALJ specifically noted that she *did consider* the teacher questionnaires. (R. at 21, 23.)

The ALJ did not ignore any evidence submitted by plaintiff and there is substantial evidence to support the ALJ's findings.   See Amaya v. Comm'r of Soc. Sec., No. CV 19-00287, 2020 WL 6336181, at *3 (D.N.J. Oct. 29, 2020) (The ALJ's decision does not require reversal for two key reasons. First, there is no indication that the ALJ ignored any of the evidence relied upon by [plaintiff] on appeal. … Second, although the evidence upon which [plaintiff] relies could support a contrary finding, there was substantial evidence to support the finding the ALJ did make); see also Maldonado v. Comm'r of Soc. Sec., 98 F. App'x 132 (3d Cir. 2004).   The ALJ did address the consistency and supportability of LCSW Flournoy's opinion and there is substantial evidence to support the weight given by the ALJ to LCSW Flournoy's opinion.   The ALJ sufficiently explained the reasons for her conclusions.

## VI.    CONCLUSION

The ALJ explained why LCSW Flournoy's opinion about marked limitations was not supported and lacked consistency.   The ALJ determined that, based on the evidence in the record, the minor was not disabled.   Having reviewed the parties' motions and briefs, the record

16

as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.   The court will deny plaintiff's motion for summary judgment (ECF No. 9).

An appropriate order and judgment will be entered.


Dated: November 6, 2025                                          BY THE COURT:


                                                                <u>/s/ JOY FLOWERS CONTI</u>
                                                                Joy Flowers Conti
                                                                Senior United States District Judge